[S. F. No. 5012.   Department Two.—December 15, 1909.]

BERTHA LARSEN, by John Larsen, her Guardian ad Litem, Respondent, v. JOHN H. BLOEMER et al., Appellants.

NEGLIGENCE—MASTER AND SERVANT—INJURY TO OPERATOR OF MACHINE—FAILURE TO EQUIP WITH SAFETY APPLIANCES.—The fact that an accident happening to an operator of a mangle occurred at a certain portion thereof which was not and in the nature of things could not be protected by a guard, did not excuse the employer from the obligation of fitting the machine with the usual modern appliances for preventing or minimizing injury.

ID.—NEGLIGENCE IN FAILURE TO REPAIR STOPPING MECHANISM.—Where an operator of a mangle in a steam laundry was injured by having her hand caught between the rollers, the employer is liable therefor if he was guilty of negligence in permitting the mechanism for stopping the machine to get out of repair so that it could not be readily used, and the evidence shows that had such mechanism been properly adjusted and used to stop the machine, the accident would have been far less serious.

ID.—QUESTIONS FOR JURY—CONFLICT OF EVIDENCE.—In an action by an employee against the employer to recover for personal injuries suffered in the course of the employment, questions as to the employee's lack of experience, or the instructions given her by the employer, or her knowledge of the dangers incident to the employment, are for the determination of the jury, and its finding thereon will not be reviewed when the evidence is conflicting.

ID.—NEGLIGENCE OF EMPLOYEE.—Whether or not the employee, under all of the circumstances revealed by the evidence, was guilty of negligence in the operation of the mangle, was a question for the jury.

AMENDMENT TO PLEADING—DETERMINATION BY TRIAL COURT.—When
and under what circumstances an order permitting an amendment
to a pleading was made, and the substance of such amendment, are
matters peculiarly for the determination of the trial court, and its
conclusion will not be disturbed on appeal.

APPEAL from a judgment of the Superior Court of Humboldt County.  G. W. Hunter, Judge.

The facts are stated in the opinion of the court.

F. A. Cutler, and F. R. Sweasey, for Appellant.

Henry L. Ford, for Respondent.

MELVIN, J.—Plaintiff, by her guardian *ad litem,* sued to recover damages for injuries to her hand and wrist received while she was working at a machine known as a "mangle." The case was tried before a jury.  A motion for nonsuit was granted in favor of May E. Bloemer, but judgment was given in favor of plaintiff against John H. Bloemer for twenty-two hundred and fifty dollars.  From this judgment he appeals.

There were two causes of action pleaded.  In the first it was alleged that at the time of the accident Bertha Larsen was a minor, inexperienced in working about a mangle, and that she had never been instructed in the dangers or hazards of employment on or near said machine; that "the said mangle of the said defendant upon which the plaintiff was put to work was unsafe, defective, unsuitable and dangerous for such use, for the reason that the said mangle when once set in motion could not readily be stopped; there being no lever near the hand of the operator for that purpose; that the said lever had become broken or out of repair so that the mechanism for starting the mangle had to be put on by the operator stooping down and with great force pushing or pulling it in place, and then in order to keep it in place was obliged to securely tie the same with a rope or string, and in order to stop the said mangle while in motion or in operation, was obliged to untie the said rope or string and with great force release the machinery and thereby stop the running of the mangle, which defective, unsafe and dangerous condition of said mangle and the apparatus and machinery thereof was

unknown to the plaintiff and was well known to the said defendants"; that while working at said mangle, in the course of her occupation and without fault on her part, she being inexperienced and uninstructed in the dangers of said machine, her fingers were caught between the heavy rollers used for the ironing of clothes, and, owing to the condition of the mangle, the operators thereon were unable to stop the machinery until the plaintiff's hand was so badly injured that amputation was made necessary. The second cause of action is based upon allegations to the effect that defendants provided Bertha Larsen an unsafe and dangerous place in which to work; that while busy at said mangle and while attempting to smooth the cloth on the rollers thereof, and without fault on her part "her fingers were caught between the rollers of the said mangle as aforesaid, which said mangle by the carelessness and negligence of the said defendants as aforesaid could not be readily stopped, and by the reason of the facts of the dangerous, defective and unsafe condition of the said machinery and appliances of the said mangle, the operators thereon were unable to stop the running of the said mangle until the same had crushed, cooked and burned the right hand of the said plaintiff Bertha Larsen, and crushed the bones and flesh thereof, and greatly bruised and wounded the said plaintiff Bertha Larsen."

According to appellant, as there is no allegation that the mangle was inherently dangerous, or that its use or danger were unknown to Bertha Larsen, she must have been guilty of contributory negligence in getting her fingers caught at all, and "plaintiff seeks to recover for that portion of the injury occasioned to her hand by the alleged negligence of defendant in maintaining the mangle in a condition so that it could not be readily stopped *after* the fingers were caught therein." Appellants' counsel assert that the courts of this state do not recognize the doctrine of comparative negligence, and that plaintiff cannot recover for the portion of the injury caused by defendant's fault, citing *Hatch* v. *McCloud River Lumber Co.*, 150 Cal. 111, [88 Pac. 355]; *Sego* v. *Southern Pacific Co.*, 137 Cal. 407, [70 Pac. 279]. But in neither of the cases cited did the obligation of an employer to his servant exist. Here the jury determined in effect that owing to the youth and inexperience of Bertha Larsen and defendant's

failure to warn her, she did not appreciate the dangers attendant upon her occupation and was, therefore, not guilty of contributory negligence in putting her hand into a place where it might be caught by the rollers. While the accident occurred at that part of the mangle which is not, and, in the nature of things cannot be, protected by a guard, this does not excuse the defendant from the obligation of fitting his machinery with the usual modern appliances for preventing or minimizing injury. In *Quinn* v. *Electric Laundry Co.,* 155 Cal. 500, [101 Pac. 795], defendant and appellant advanced the theory that as no guard could make the mangle absolutely safe, it was not negligent in failing through its servants to keep a certain guard properly adjusted. But we there held as follows:—"If it was the duty of defendant to keep this guard in proper position in order that the danger might not be obviated entirely but materially lessened, then the failure to perform such duty would be as reprehensible as the neglect with reference to some safety appliance which might be attached to a piece of mechanism in such a manner as to exclude all danger of accident. It is certain that one's fingers would pass more easily through a space one inch wide than through an aperture but one fourth of an inch in width." So here, it might be said with equal force, that one is less apt to lose a hand in a mangle which may be quickly stopped than in a machine not fitted with modern appliances for throwing off the belt by an easily accessible lever. There was abundant evidence that for a long time prior to the accident the lever by which the belt had formerly been thrown easily and quickly off the pulley controlling the operation of the mangle, had been out of order and that the machinery was stopped or started by a cord fastened to a portion of the mechanism and leading not to a place near the front of the machine, but to a location near that part of the mangle where the clothes were folded after passing between the rollers. It was necessary to stoop down in order to reach this cord, and several of the girls who had worked in the laundry testified that at times it was difficult to stop the machinery by the method in use after the lever was out of order. There was testimony by Bertha Larsen and other employees in the laundry that after the girl screamed for help considerable time elapsed before the machine was stopped. One of the girls

who saw the accident testified: "If the machine could have been stopped when she hallooed, I should not think it would have mangled or hurt any more than the ends of her fingers."

This case in its facts is much like that of *Sibert* v. *Scotland Cotton Mills*, 145 N. C. 308, [59 S. E. 79]. There the "shifter" for throwing the belt on and off the pulley was out of order. Plaintiff, while working about the machinery, was caught by the sleeve and his arm was drawn into certain cogs and injured by reason of the fact that the belt could not be quickly moved. There the learned court used the following language: "It may be conceded that the frames at which plaintiff was put to work were of proper construction and in good condition; that there was no evidence on the part of defendant, either in respect to the frames or the travis gear; that defendant was guilty of no negligence in failing to instruct plaintiff in his work. It may be further conceded that his sleeve getting caught in the travis gear was an accident for which defendant was not responsible, or that plaintiff did not exercise due care to avoid the danger of getting caught in the cogs. The question arises whether there was negligence in permitting the levers of the shifters, provided for the purpose of starting and stopping the frames, to be 'out of fix,' and whether such negligence was the proximate cause of the injury. It appears that the wheels, upon which were the cogs of the travis gear, move slowly, and that, if the shifters had been in good repair and had performed the office for which they were intended, the frames could easily have been stopped by pushing the lever, throwing the belt from the tight to the loose pulley, and plaintiff would not have sustained any injury further than tearing his shirt sleeve. The plaintiff, assuming, as we must do, the truth of his testimony, was pursuing instructions—working as directed by the 'head boss.' There is always more or less danger that employees working in mills, even when the machinery is in proper repair, will become entangled in the wheels, cogs, etc. This is one of the dangers incident to the employment. Where there is no negligence in respect to the construction, repair of machinery, or in failing to give instruction as to the manner of operating the machine, an injury sustained by the employee is attributed either to accident or the negligence of the employees. The risk of such injury is

assumed. Recognizing the danger of such accidents, employers use such safety appliances as are in general use, either to avert the danger or to stop the machine in the event that an injury is imminent. Defendant had attached to the frames upon which plaintiff was employed shifters controlled by levers, easily operated, by which, in an emergency, the frames could be stopped. It was the duty of defendant to use reasonable care by proper construction and frequent inspection, to have and keep them in working order. If it failed to do so, there was a breach of duty to plaintiff." We thoroughly agree with the doctrine so clearly expressed by the learned supreme court of North Carolina, and regard the case at bar entirely within the principles above announced.

In this case the court submitted to the jury (and we think properly) the questions of Bertha Larsen's minority and her lack of instruction regarding the dangers of her employment. This was within the pleadings previously quoted. There was a conflict of evidence both as to her instruction or lack of it, and in reference to her knowledge of the dangers of putting her hand upon the rollers on the "receiving" side of the mangle where the clothes were taken out and folded after they had been ironed. With such conflict we have nothing to do if there is any evidence tending legitimately to sustain the plaintiff's theories on these points. Bertha Larsen testified that she had received no warning or instruction with reference to the dangers to be encountered in working about the machine. At the time of the accident she had been employed by defendant just four weeks. She testified in part as follows: "I never paid any particular attention to the machine on the folding side because I did not realize there was any danger there where the clothes came out. The machine had just started up before I was injured and the rollers were turning very slowly. The rollers were covered with a canvas or cloth. That cloth would sometimes become wrinkled, and they were straightened out by our hands. If it was running we would do it while the machine was in operation." Speaking of the manner in which her fingers were caught, she said: "I don't know exactly how I got them in that day unless I was smoothing the cloth." She was corroborated in many of her statements by other witnesses. We cannot, therefore, disturb the conclusions of the court and jury regarding her

minority, her ignorance of machinery, and her lack of instruction with reference to the dangers of her work at the mangle. But appellant contends that the peril was so obvious that she must be presumed to have been fully cognizant of it. With the record in this case are photographs of the mangle, accompanied by an explanation of its mechanism. From this it appears that while she must have observed the cloth-covered rollers from her station at the folding bench or shelf, she could not see the heated cylinder which produced so much of the damage suffered by her. As was said by this department in *Quinn* v. *Electric Laundry Co.*, 155 Cal. 500, [101 Pac. 795], referring to a hidden roller: "It would seem that the position and function of this roller at least should have been fully explained by defendant to any person who was directed to guide clothes into this ponderous machine." Whether or not, under all of the circumstances revealed by the evidence, plaintiff was negligent is a question peculiarly for the jury. (*Buchel* v. *Gray Brothers*, 115 Cal. 421, [47 Pac. 112].)

We have carefully examined the instructions and find no errors therein.

There was some controversy with reference to an amendment to the complaint which, according to appellant's counsel, was inserted in the record after the trial. Appellant filed an affidavit by the county clerk that said amendment was not permitted during or before the trial. This was met by a counter affidavit by respondent's attorney to the effect that the amendment in question had been allowed at the trial, but had not been copied into the pleading by the clerk as ordered by the court. This matter was heard by the judge of the superior court at a time when counsel for all the parties were present and determined adversely to appellant's contention. When and under what circumstances an order permitting an amendment to a pleading is made and the substance of such amendment, are matters peculiarly "within the breast of the court." We will not disturb the correction in diminution of the record thus made.

The judgment is affirmed.

Lorigan, J., and Henshaw, J., concurred.